**CITRUS MARKETING BOARD OF ISRAEL and Agrexco (U.S.A.) Ltd., Plaintiffs,**

v.

**M/V ECUADORIAN REEFER, her engines, boilers, tackle, etc., in rem, Defendant.**

**Civ. A. No. 90–10830–K.**

United States District Court, D. Massachusetts.

Dec. 28, 1990.

Richard H. Pettingell, Joseph A. Regan, Morrison, Mahoney & Miller, Boston, Mass., for plaintiffs.

Michael John Rauworth, Bingham, Dana & Gould, Boston, Mass., for defendant.

Michael John Rauworth, Thomas H. Walsh, Jr., Bingham, Dana & Gould, Boston, Mass., Robert L. Mahar, Freehill, Hogan & Mahar, New York City, for claimant Ecuardorian Reefer, K/S.

OPINION

KEETON, District Judge.

This is an *in rem* admiralty action brought by plaintiffs against defendant vessel for damage to plaintiffs' cargo of citrus fruit allegedly sustained on a voyage on defendant vessel from Haifa, Israel to New Bedford, Massachusetts in March, 1990.

Now before the court are: (1) Claimant's Motion for Stay Pending Arbitration (Docket No. 14, filed June 15, 1990) along with supporting memorandum (Docket No. 15, filed June 15, 1990); (2) Plaintiffs' Opposition to Defendant's Motion for Stay and Plaintiffs' Cross–Motion to Transfer Action (Docket No. 20, filed July 24, 1990) along with supporting memorandum (Docket No. 21, filed July 24, 1990), addendum to supporting memorandum (Docket No. 24, filed

August 16, 1990) and supporting Affidavit of John R. Keough, III (Docket No. 22, filed July 24, 1990); (3) Claimant's Opposition to Plaintiffs' Motion to Transfer and Claimant's Reply Memorandum (Docket No. 25, filed August 24, 1990); (4) Plaintiffs' Reply Memorandum (Docket No. 26, filed September 14, 1990); and (5) Claimant's Responsive Memorandum (Docket No. 30, filed October 25, 1990).

## I. Motion for Stay

### A. The Facts

■ Before stating the material facts relating to the motion for stay, I note that I have not considered the factual assertions contained in the Affidavit of John R. Keough, III. Mr. Keough is a member of the law firm of Waesche, Sheinbaum & O'Regan, P.C., attorneys for plaintiffs. If a court considers factual assertions such as these in deciding a pending matter, then the attorney has become a witness in the case and thus may have run afoul of ABA Model Code of Professional Responsibility DR 5–102(A) (which applies to counsel in this case under Mass.S.J.C.Rule 3:07 and Rule 83.6(4)(B) of the Local Rules of the United States District Court for the District of Massachusetts), possibly subjecting himself and his law firm to the mandatory withdrawal provisions of that Disciplinary Rule. *Cf. United States v. LaRouche Campaign*, 682 F.Supp. 610, 615–617 (D.Mass.1987).

In determining material facts, I have nevertheless considered several of the exhibits that are attached to the Keough Affidavit because their authenticity is independently apparent.

Although the parties have not submitted a stipulation of facts, it is evident from their respective memoranda and supporting materials that the parties are in agreement as to the facts relevant to the motion for stay. In March, 1990 the defendant vessel was operating under a time charter dated October 14, 1987 (the "Head Charter") between Lauritzen Reefers A/S, as disponent owner of the vessel, and Chiquita Brands, Inc. ("Chiquita") as charterer. Exhibit 2 attached to Affidavit of Keough. In December, 1989, Chiquita sub-chartered the vessel to plaintiff Citrus Marketing Board of Israel ("CMBI") under a voyage charter party (the "Voyage Charter Party"). Exhibit 4 attached to Affidavit of Keough. Clause 43 of the Voyage Charter Party provided, in relevant part, that: "Any dispute arising under this Charter Party to be settled in London by Arbitration." On March 7, 1990, the vessel's master issued a bill of lading (the "Bill of Lading") for the cargo of fruit. Exhibit 5 attached to Affidavit of Keough. Typed on the face of the Bill of Lading are the following words:

All terms, conditions, clauses and exceptions, including Arbitration Clause, Laytime Clause contained in C/P dated Oslo December 28, 1989 [the Voyage Charter Party], are hereby expressly included in this Bill of Lading and are agreed to be incorporated herein. All terms, conditions, clauses and exceptions contained in this Bill of Lading are null and void to such extent as they are contrary to any provisions in said C/P but not further.

K/S Ecuadorian Reefer (the "Owner") has filed a claim to the vessel and has restricted its appearance in this case to the defense of the *in rem* action. In the first paragraph of Owner's Claim to Vessel (Docket No. 31, filed June 15, 1990), Owner makes claim to defendant M/V Ecuadorian Reefer. However, plaintiffs point out that in the second paragraph of Owner's Claim to Vessel, the Owner claims to be the sole owner of the M/V Artemis and not defendant M/V Ecuadorian Reefer. Nevertheless, plaintiffs have not opposed Owner's claim to defendant vessel nor have they questioned Owner's standing to defend this action on behalf of defendant vessel.

### B. The Arbitration Issue

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA"), embodies a congressional policy in favor of strict enforcement of arbitration clauses contained in commercial contracts. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 625, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985). The policy is forcefully stated in 9 U.S.C. § 2: "A written provision in any maritime transaction . . . to settle by

arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Relevant to this case is 9 U.S.C. § 4 which states that:

> [a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

■ Despite some argument to the contrary put forth by defendant, the Bill of Lading is the only contract for carriage of the cargo as between plaintiffs and defendant vessel and it is the only legal document regulating the relations between plaintiffs and defendant vessel and the Owner. *Bunge Corporation v. M/T Stolt Hippo,* 1980 AMC 2611, 2613 (S.D.N.Y. 1979). The issue presented by the motion for stay is whether the arbitration clause of the Voyage Charter Party, incorporated by reference into the Bill of Lading, binds the plaintiffs and defendant vessel to resolve through arbitration the dispute that is the subject of the Complaint in this action. The resolution of this issue is found in one of two lines of cases that are squarely opposed to each other.

Plaintiffs argue that, notwithstanding the fact that the arbitration clause of the Voyage Charter Party was incorporated into the Bill of Lading, that arbitration clause is nonetheless unenforceable as between plaintiffs and defendant vessel and the Owner because the Owner was not a party to the Voyage Charter Party. Plaintiffs cite numerous cases in support of this proposition which, for the most part, are collected in *Federal Insurance Company v. M.V. Audacia,* 1987 AMC 566 (S.D.N.Y. 1986). The court in *M.V. Audacia* held:

> Where a defendant-shipowner's chartered vessel has been subchartered pursuant to a subcharter clause requiring arbitration of any dispute arising under the subcharter, and the bill of lading issued by the master is explicitly made subject to all the terms, provisions, and conditions of the subcharter between the charterer and the subcharterer ..., the shipowner cannot rely on and invoke the subcharter arbitration clause as a basis for a stay under 9 U.S.C. sec. 4 against the holder of the bill of lading "absent a further provision making the arbitration clause in the head charter applicable." 2A *Benedict on Admiralty,* sec. 106 at 8–16 (6th ed. 1986). The rationale is that the shipowner is not a party to the subcharter.

*M.V. Audacia,* 1987 AMC at 569–70 (citations omitted). *M.V. Audacia* is directly on point with the facts of this case.

However, the line of cases cited, and relied upon, in *M.V. Audacia* has been rejected by a contrary line of cases. In *Coastal States Trading, Inc. v. Zenith Navigation, S.A.,* 446 F.Supp. 330 (S.D.N.Y.1977), a suit brought by a consignee named in a bill of lading that incorporated an arbitration clause contained in a separate charter party against the owner of the vessel to recover a total loss of cargo, the court held:

> The fact that the provisions adopted in the bill of lading were terms of another *contract,* rather than standard provisions in a form book or the terms of legislation or international agreements, does not in any way detract from their legal significance as integral parts of the contract which is the bill of lading. As such they are binding upon the persons seeking to assert rights under the contract.... "Where terms of the charter party are ... expressly incorporated into the bill[ ] of lading they are a part of the contract of carriage and are binding upon those making claim for damages for the breach of that contract just as they would be if the dispute were between the [parties to the charter agreement]."

*Coastal States Trading, Inc.,* 446 F.Supp. at 339, *quoting Son Shipping Co., Inc. v. De Fosse & Tanghe,* 199 F.2d 687, 688 (2d Cir.1952) (emphasis supplied). *See also Castle & Cooke, Inc. v. Etoile Shipping Co., Ltd.,* 622 F.Supp. 609, 610 (D.P.R.1985) ("To compel arbitration pursuant to a clause in a charter party it is not necessary for the claimant to be a party to the charter agreement").

I conclude that the doctrine set forth in *Coastal States* is more persuasive than the doctrine contained in *M.V. Audacia,* and I therefore conclude that *Coastal States* should be the law accepted by the court as controlling in this case. Plaintiff has not set forth any rationale for the *M.V. Audacia* doctrine other than that a party to a carriage contract set forth in a bill of lading should not be allowed to take advantage of terms incorporated from another contract if that party was not party to that other contract. However, this is simply not the law pertaining to incorporation of terms, and, other than the maritime cases cited by plaintiff that are silent on this issue, plaintiff has cited no authority as to *why* the general contract law of incorporation of terms should not apply to maritime contracts. *See* 3 A. Corbin, *Corbin on Contracts* § 549 (1960) at 188–90:

> In many cases ... the terms of agreement may be expressed in two or more separate documents.... In every such case, these documents should be interpreted together, each one assisting in determining the meaning intended to be expressed by the others. This is true whether the documents are all executed by a single party or by two or more parties, and *whether some of the documents are executed by parties who have no part in executing the others.*

(Emphasis added and footnote omitted).

Therefore, I conclude that the arbitration clause contained in the Voyage Charter Party is incorporated into the Bill of Lading and is binding on the plaintiffs and on defendant vessel and the Owner.

## II. COGSA

■ Plaintiff contends that even if the arbitration clause of the Voyage Charter Party is incorporated into the Bill of Lading, it is nevertheless unenforceable under the terms of the Carriage of Goods by Sea Act, 46 U.S.C.App. § 1300 *et seq.* ("COGSA"). In particular, plaintiff argues that provisions for foreign arbitration contained in a bill of lading lessen the liability of a carrier in violation of § 1303(8).

COGSA regulates the terms of contracts for carriage of goods at sea that are contained in bills of lading. Section 1300 of COGSA states that "[e]very bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade, shall have effect subject to the provisions of this chapter." Thus, as a matter of law, COGSA is applicable to this case. Moreover, in Paragraph 1 of the Contract Terms and Conditions of the Bill of Lading, the parties have expressly agreed that the "Bill of Lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act (COGSA) of the United States...."

Section 1303(8) of COGSA reads in relevant part: "Any clause, covenant, or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with the goods ... or lessening such liability otherwise than as provided in this chapter, shall be null and void and of no effect." Plaintiff principally relies on two cases for the proposition that a foreign arbitration provision in a bill of lading is a *per se* violation of § 1303(8). In *State Establishment for Agricultural Product Trading v. M/V Wesermunde,* 838 F.2d 1576, 1581 (11th Cir. 1988), *cert. den'd sub nom. United Kingdom Mutual S.S. Assur. Ass'n v. State Establishment For Agricultural Product Trading,* 488 U.S. 916, 109 S.Ct. 273, 102 L.Ed.2d 262 (1988), the court held:

> that a provision requiring arbitration in a *foreign* country that has no connection with either the performance of the bill of lading contract or the making of the bill of lading contract is a provision that would conflict with COGSA's general purpose of not allowing carriers to lessen their risk of liability.

(emphasis supplied). The court did not provide a rationale for its decision other than to state that, as a practical matter, requiring arbitration of claims in a foreign forum will increase the expense of pursuing claims for cargo claimants and thus will increase the likelihood of artificially low settlements.

In *Organes Enterprises, Inc. v. The M/V Khalij Frost*, 1989 AMC 1460 (S.D.N.Y.1989), the court followed *M/V Wesermunde* and went on to set forth a four-pronged rationale for its decision that a foreign arbitration provision contained in a bill of lading is a *per se* violation of § 1303(8): (1) a foreign arbitration provision could limit an American plaintiff's ability to effectively enforce a carrier's liability and force the plaintiff to accept an otherwise unacceptable settlement (the court's concern here appears to be the additional travel expenses required by foreign arbitration); (2) the plaintiff will have no assurance that the foreign arbitrator will apply COGSA to the case or that the United States court in which the action is brought will require the arbitrator to enforce COGSA; (3) arbitrators rarely explain their decisions and courts rarely upset their decisions; and (4) rules of evidence do not generally apply in arbitration. *M/V Khalij Frost*, 1989 AMC at 1463–63. *See also Siderius, Inc. v. M.V. Ida Prima*, 613 F.Supp. 916, 921 (S.D.N.Y.1985) (same four-part rationale set forth).

In *Mitsubishi Motors*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), the Supreme Court, after reiterating its interpretation of the FAA to the effect that it embodies a liberal federal policy in favor of enforcing contractually arranged arbitration provisions, *Mitsubishi Motors*, 473 U.S. at 625, 105 S.Ct. at 3353, went on to state that "we are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution." *Mitsubishi Motors*, 473 U.S. at 626–27, 105 S.Ct. at 3354. Notwithstanding these clear statements from the Court, the cases cited by plaintiffs in support of their argument that the foreign arbitration clause in the Bill of Lading violates § 1303(8) reflect the sort of judicial suspicion of arbitration that has been renounced by the Court.

As stated above, the court in *M/V Wesermunde* provides little rationale for its *per se* rule; it merely concludes that forcing a party to arbitrate in an inconvenient forum, particularly in the case of a small claim, is likely to force cargo claimants into artificially low settlements and is thus likely to lessen the carrier's liability. Of the four reasons set forth in the *M/V Khalij Frost* and *M.V. Ida Prima* decisions, the first reason merely deals with the inconvenience of the foreign forum for an American plaintiff (a concern that is not even present in this case since neither of the plaintiffs is an American corporation), the next two reasons reflect mistrust of arbitrators and the last reason indicates mistrust of the arbitration process. Since the Supreme Court has clearly rejected such mistrust of arbitrators and the arbitration process as the basis for a court's refusal to enforce contractual arbitration clauses, I conclude that the above cases are inconsistent with the commands of the Court and do not provide adequate support for plaintiffs' position.

The general pronouncements of the Court in *Mitsubishi Motors* provide the law that controls the decision in this case with respect to the COGSA issue. In the context of deciding that a foreign arbitration clause contained in an agreement, which provided for arbitration of all disputes arising under the agreement, was enforceable with respect to antitrust claims arising under the agreement, notwithstanding prior law disfavoring arbitration of antitrust claims, the Court made several statements directly applicable to this case. The Court made a broad statement in favor of enforcing foreign arbitration clauses contained in contracts entered into in the course of international commerce:

> [C]oncerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution

of disputes require that we enforce the parties' agreement [for foreign arbitration], even assuming that a contrary result would be forthcoming in a domestic context.

*Mitsubishi Motors,* 473 U.S. at 629, 105 S.Ct. at 3355. The Court went on to say that there is "a strong presumption in favor of enforcement of freely negotiated contractual choice-of-forum provisions ... [and that] that presumption is strongly reinforced by the emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors,* 473 U.S. at 631, 105 S.Ct. at 3356.

Moreover, in *Mitsubishi Motors* the Court also gave instruction to lower courts with respect to determining whether—as asserted by plaintiffs in this case—claims under a particular statute are precluded from arbitration even though the disputants agreed to submit such claims to arbitration. The Court stated that a court must look to the congressional intent expressed in the statute:

> We must assume that if Congress intended the substantive protection afforded by a given statute to include protection against waiver of the right to a judicial forum, that intention will be deducible from text or legislative history. Having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.

*Mitsubishi Motors,* 473 U.S. at 628, 105 S.Ct. at 3354–55 (citation omitted). The Court has recently supplemented this pronouncement in *Rodriguez De Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 1921, 104 L.Ed.2d 526 (1989) where it held that

> [u]nder ... [the FAA], the party opposing arbitration carries the burden of showing that Congress intended in a separate statute to preclude a waiver of judicial remedies, or that such a waiver of judicial remedies inherently conflicts with the underlying purposes of that other statute.

Plaintiffs have failed to meet their burden of demonstrating that Congress manifested in COGSA an intent to preclude foreign arbitration of disputes relating to bills of lading that are governed by COGSA. They have also failed to demonstrate that such foreign arbitration "inherently conflicts with the underlying purposes of [COGSA]." *Rodriguez De Quijas,* 109 S.Ct. at 1921. Therefore, given the foregoing and given the strong expressed presumption in favor of the enforceability of arbitration clauses entered into in the course of international commerce, I conclude that COGSA does not preclude enforcement of the foreign arbitration clause contained in the Bill of Lading and that this action should be stayed pending the outcome of arbitration.

### III. Motion to Transfer

Since I conclude that this action should be stayed pending the outcome of arbitration—a decision that plaintiffs do not contend should be made in another venue—determination of plaintiffs' motion for transfer with respect to any further proceedings in this case will be deferred.

### ORDER

For the foregoing reasons, it is ORDERED:

(1) Defendant's Motion for Stay Pending Arbitration (Docket No. 14) is allowed.

(2) Determination of Plaintiffs' Motion to Transfer (Docket No. 20) is deferred pending completion of arbitration.