943 F.2d 220
 1991 A.M.C. 2705
 CITRUS MARKETING BOARD OF ISRAEL and Agrexco (U.S.A.) Ltd.,
Plaintiffs-Appellants, Cross-Appellees,
v.
J. LAURITZEN A/S, and Irgens Larsen A/S, Defendants,
J. Lauritzen A/S, Defendant-Appellee, Cross-Appellant.
 Nos. 1271, 1431, Dockets 90-9084, 90-9130.
 United States Court of Appeals,
Second Circuit.
 Argued April 8, 1991.
Decided Aug. 28, 1991.
 
 John R. Keough, III, New York City (Waesche Sheinbaum & O'Regan, P.C., of counsel), for plaintiffs-appellants, cross-appellees.
 Robert L. Mahar, New York City (Freehill, Hogan & Mahar, of counsel), for defendant-appellee, cross-appellant.
 Before CARDAMONE and MAHONEY, Circuit Judges, and PARKER,* District Judge.
 MAHONEY, Circuit Judge:
 
 
 1
 Plaintiffs-appellants, cross-appellees Citrus Marketing Board of Israel ("CMBI") and Agrexco (U.S.A.) Ltd. ("Agrexco") appeal from a judgment of the United States District Court for the Southern District of New York, Kevin Thomas Duffy, Judge, that dismissed their complaint for failure to state a claim upon which relief can be granted. Defendant-appellee, cross-appellant J. Lauritzen A/S ("Lauritzen") cross-appeals from that judgment insofar as it denied Lauritzen's motion to stay this action pending arbitration. We reverse the dismissal of the complaint, affirm the denial of the stay, and remand.
 
 Background
 
 2
 CMBI is the shipper, and Agrexco the consignee, of a shipment of oranges and grapefruit carried on board the M/V Ecuadorian Reefer (the "Vessel") from Haifa, Israel to New Bedford, Massachusetts in March 1990. The complaint alleges that Lauritzen managed the Vessel.[1] It further alleges that the shipment of citrus fruit aboard the Vessel arrived at the port of New Bedford "damaged and/or short," and that:
 
 
 3
 Said loss and/or damage ... was proximately caused or contributed to by the fault, neglect and want of care on the part of defendants and/or their agents, servants, employees or representatives in that defendants failed to maintain the said vessel in a seaworthy condition, improperly managed the vessel, improperly cared for the cargo and/or improperly manned the vessel....
 
 
 4
 Prior to commencing this action, CMBI and Agrexco brought an in rem action against the Vessel in the United States District Court for the District of Massachusetts. See Citrus Marketing Bd. of Israel v. M/V Ecuadorian Reefer, 754 F.Supp. 229 (D.Mass.1990). On June 15, 1990, the asserted owner of the Vessel, K/S Ecuadorian Reefer, filed a claim to the Vessel and a motion to stay the action pending arbitration in London.
 
 
 5
 Although it cannot be confirmed in the record before this court, the opinion in the Massachusetts action indicates that K/S Ecuadorian Reefer chartered the Vessel to Lauritzen Reefers A/S (to be distinguished from the party herein, J. Lauritzen A/S), which then time-chartered it to Chiquita Brands, Inc. ("Chiquita"). Id. at 230.[2] The record herein does establish, in any event, that Chiquita entered into a voyage charter dated December 28, 1989 with CMBI.[3] That charter provided for "Any dispute arising under this Charter Party to be settled in London by Arbitration," adding various provisions regarding the conduct of any arbitration.
 
 
 6
 The voyage charter incorporated a bill of lading that was issued at Haifa on March 7, 1990, naming CMBI as shipper and Agrexco as consignee. The bill of lading, in turn, includes a "Clause Paramount" incorporating the Carriage of Goods by Sea Act, 46 U.S.C.app. §§ 1300-15 (1988) ("COGSA"). In addition, clause 16 of the bill of lading provides:
 
 
 7
 Benefit to Third Parties. Every agent or employee of the Carrier or Shipowner and every independent contractor who performs any part of the services provided by the Carrier or Shipowner, including the vessel's officers and crew, stevedores, shore side employees, draymen, crane and other machinery operators, shall have the same rights, privileges, limitations of liability[ ] immunities and powers provided for the Carrier by this contract, by the Carriage of Goods by Sea Act, or by any other statute or regulation, the foregoing contract provisions being made by the Carrier and Shipowner for the benefit of all other persons and parties performing services in respect of loading, handling, stowing, carrying, keeping, caring for, discharging, and delivering the Goods or otherwise.
 
 
 8
 As is apparent, clause 16, inter alia, purports to extend the carrier's rights and immunities under COGSA to other parties. Such a clause is known as a "Himalaya clause." See Comment, Carriage of Goods by Sea: Application of the Himalaya Clause to Subdelegees of the Carrier, 2 Mar.Law. 91, 92 (1977) (explaining derivation of the term "Himalaya clause" from a British case involving the vessel Himalaya and discussing such clauses' reception in the courts).
 
 
 9
 While the motion to stay the Massachusetts action was pending, CMBI and Agrexco initiated the instant lawsuit on July 11, 1990 in the United States District Court for the Southern District of New York. On July 24, 1990, they filed papers in the Massachusetts action opposing the motion to stay that action pending arbitration, and cross-moving to transfer that action to the Southern District of New York.
 
 
 10
 On August 21, 1990, Lauritzen moved in the Southern District of New York for a stay of this action pursuant to section 3 of the Federal Arbitration Act, 9 U.S.C. § 3 (1988), pending the London arbitration. The argument of that motion was heard on November 14, 1990. After brief colloquy concerning the motion for a stay, the district court asked plaintiffs' counsel to state his theory of the case. Counsel responded that "the ship manager, in employing the crew and in supervising the crew, was negligent and hired incompetent officers."
 
 The district court then stated:
 
 11
 What you're basically suing for is damage to cargo. I don't care what you call it--you can call it a maritime tort; you can call it a Fudgicle--you are suing under the contract of carriage. You don't have a maritime tort. You can call it anything you want: you lose.
 
 
 12
 I would assume that if that is the basis for your action, I will be seeing a motion to dismiss, which I will grant.
 
 
 13
 Counsel for Lauritzen then moved to dismiss the complaint, and the district court granted that motion while denying the motion for a stay. These rulings were incorporated in a judgment entered November 20, 1990. CMBI and Agrexco appealed from the dismissal, and Lauritzen cross-appealed from the denial of the stay. Subsequently, on December 28, 1990, the United States District Court for the District of Massachusetts stayed the Massachusetts action pending the London arbitration, and deferred decision on the motion to transfer that action to the Southern District of New York. See 754 F.Supp. at 234.
 
 Discussion
 
 14
 A. The Motion to Dismiss.
 
 
 15
 The district court essentially ruled that plaintiffs' only cause of action was a contract action which would be governed by COGSA. The immunities and limitations provided by COGSA, however, extend only to a "carrier" of goods by sea, see Robert C. Herd & Co. v. Krawill Machinery Corp., 359 U.S. 297, 301-03, 79 S.Ct. 766, 769-70, 3 L.Ed.2d 820 (1959), and "there is nothing in the provisions, [or] legislative history and environment of [COGSA], to indicate any intention ... of Congress ... to limit the liability of negligent agents of the carrier." Id. at 302-03, 79 S.Ct. at 769-70. In so ruling, the Court emphasized the statutory definition of the term "carrier," see id. at 301, 79 S.Ct. at 769, which defines the term to include "the owner or the charterer who enters into a contract of carriage with the shipper." 46 U.S.C.app. § 1301(a) (1988).
 
 
 16
 In Herd, the Supreme Court unanimously affirmed a judgment against a negligent stevedore sued separately from the shipper, and rejected the stevedore's contention that it was entitled to the $500-per-package limitation on liability provided by section 1304(5) of COGSA. See 359 U.S. at 308, 79 S.Ct. at 772; see also In re Delphinus Maritima, S.A., 523 F.Supp. 583, 597 (S.D.N.Y.1981) ("An agent [of the carrier] is not covered by the limitations of COGSA available to the carrier, and may be fully liable for its acts of negligence. Cerro Sales Corp. v. Atlantic Marine Enterprises, Inc., 403 F.Supp. 562, 568 (S.D.N.Y.1975)."). We therefore conclude that the district court erred in dismissing the complaint on the basis that COGSA, standing alone, precluded a separate action against Lauritzen.
 
 
 17
 Lauritzen argues, however, that it is entitled to the protections of COGSA because of the Himalaya clause included in the bill of lading. Since we may affirm on any basis for which there is a record sufficient to permit conclusions of law, including grounds upon which the district court did not rely, see In re Chesley v. Union Carbide Corp., 927 F.2d 60, 68 (2d Cir.1991); Larsen v. NMU Pension Trust, 902 F.2d 1069, 1070 n. 1 (2d Cir.1990); Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir.1987), we address this contention.
 
 
 18
 "Parties may contractually extend COGSA's application beyond its normal parameters." Colgate Palmolive Co. v. S/S Dart Canada, 724 F.2d 313, 315 (2d Cir.1983), cert. denied, 466 U.S. 963, 104 S.Ct. 2181, 80 L.Ed.2d 562 (1984). For example, in Bernard Screen Printing Corp. v. Meyer Line, 464 F.2d 934 (2d Cir.1972) (per curiam), cert. denied, 410 U.S. 910, 93 S.Ct. 966, 35 L.Ed.2d 272 (1973), we approved contractual provisions in a bill of lading that extended to stevedores the $500-per-package liability limitation conferred upon carriers by 46 U.S.C.app. § 1304(5) (1988). Accord, Seguros "Illimani" S.A. v. M/V Popi P, 929 F.2d 89, 93-94 (2d Cir.1991); Barretto Peat, Inc. v. Luis Ayala Colon Successors, Inc., 896 F.2d 656, 659-60 (1st Cir.1990); Institute of London Underwriters v. Sea-Land Serv., Inc., 881 F.2d 761, 766-67 (9th Cir.1989); Brown & Root, Inc. v. M/V Peisander, 648 F.2d 415, 425 (5th Cir.1981); Tessler Brothers (B.C.) Ltd. v. Italpacific Line, 494 F.2d 438, 446-47 (9th Cir.1974).
 
 
 19
 When, as in this case, contracting parties use a Himalaya clause to extend the application of COGSA's liability limitations, "COGSA does not apply of its own force, but merely as a contractual term." Colgate Palmolive, 724 F.2d at 315. In addition, "such [contractual] limitations are to be strictly construed against the party whom they are claimed to benefit." Schiess-Froriep Corp. v. S.S. Finnsailor, 574 F.2d 123, 127 (2d Cir.1978).
 
 
 20
 In Schiess-Froriep, we considered the Himalaya clause there at issue to be ambiguous, and accordingly remanded because "the parties have a right to present oral testimony or other extrinsic evidence at trial to aid in interpreting its ambiguous provisions." 574 F.2d at 127-28; see also Rupp v. International Terminal Operating Co., 479 F.2d 674, 677 (2d Cir.1973) (decisions "turn on the language of the particular limitation of liability clause"). So here, it is appropriate for the district court to consider in the first instance whether Lauritzen is an "agent or employee of the Carrier or Shipowner" or an "independent contractor who performs any of the services provided by the Carrier or Shipowner" within the meaning of the Himalaya clause at issue in this case,[4] especially in view of the scanty development, to date, of the record regarding the relationship of Lauritzen to the "Carrier or Shipowner."
 
 
 21
 We note also that CMBI and Agrexco seek recovery, inter alia, for Lauritzen's alleged negligence in the management of the Vessel, and that 46 U.S.C.App. § 1304(2)(a) (1988) exempts a carrier or ship from liability for the negligence of the carrier's agents "in the management of the ship." If Lauritzen is ultimately deemed to be a beneficiary of the Himalaya clause herein, and therefore generally entitled to the immunities provided by COGSA (including section 1304(2)(a)), it will be necessary to decide (as to this claim) whether, as the Ninth Circuit has held, "a contract, no matter how clear and express, which purports wholly to immunize a non-carrier from liability for its negligence, is repugnant to traditional law and to sound policy." Grace Line, Inc. v. Todd Shipyards Corp., 500 F.2d 361, 373 (9th Cir.1974); cf. Colgate Palmolive, 724 F.2d at 315-16 (refusing to apply COGSA $500-per-package limitation in view of governing state law because "provisions of COGSA incorporated by contract can be valid only insofar as they do not conflict with applicable state law").
 
 
 22
 It has not yet been decided, however, whether the Himalaya clause benefits Lauritzen at all. Furthermore, as we discuss below, that question may never be reached in this litigation if a stay is entered on remand. It would therefore be premature for us to address, at this juncture, the issue, one of first impression in this circuit, whether the exemption for negligence "in the management of [a] ship" afforded to a carrier by section 1304(2)(a) may be extended by a Himalaya clause to a carrier's agent entrusted with the management of the ship.
 
 
 23
 We turn to the stay issue.
 
 
 24
 B. The Motion to Stay.
 
 
 25
 The district court denied Lauritzen's motion for a mandatory stay pursuant to 9 U.S.C. § 3 (1988)[5], after a brief colloquy with counsel, apparently on the basis that Lauritzen was not a party to the contract that included the arbitration provision. We have construed section 3 not to authorize a stay at the behest of such a nonparty. See Nederlandse Erts-Tankersmaatschappij v. Isbrandtsen Co., 339 F.2d 440, 441 (2d Cir.1964). More recently, however, in McCowan v. Sears, Roebuck & Co., 908 F.2d 1099 (2d Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 250, 112 L.Ed.2d 209 (1990), we reserved the question whether a nonparty to an arbitration agreement was entitled to a section 3 stay, in view of the entitlement to a stay of a codefendant (who was a party to the agreement) that provided an adequate basis for decision. See id. at 1107-08. We nonetheless indicated that a "commonsense reading" of section 3 would call for a stay "if there is a federal action 'upon' an 'issue referable to arbitration,' " id. at 1106 (quoting section 3), apparently whether or not the movant seeking the stay was a party to the pertinent arbitration agreement.[6]
 
 
 26
 McCowan explicitly invoked the "liberal federal policy favoring arbitration" enunciated in Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), as well as similar expressions in Mitsubishi Motors Corp. v. Soler Chrysler- Plymouth, Inc., 473 U.S. 614, 625, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985), and Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985), in favor of an expansive reading of section 3. See McCowan, 908 F.2d at 1107. Arguably, at least, these intervening Supreme Court authorities might have provided a basis for reconsideration of Nederlandse, despite the normally binding force of prior Second Circuit precedent. See Leecan v. Lopes, 893 F.2d 1434, 1443 (2d Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 2627, 110 L.Ed.2d 647 (1990); United States v. Salerno, 868 F.2d 524, 534 (2d Cir.), cert. denied, 491 U.S. 907, 109 S.Ct. 3192, 105 L.Ed.2d 700, --- U.S. ----, 110 S.Ct. 56, 107 L.Ed.2d 24, 25 (1989); Board of Educ. of City School Dist. v. Hufstedler, 641 F.2d 68, 70 (2d Cir.1981). McCowan, however, made no reference to Nederlandse, and we have since reaffirmed the Nederlandse ruling on this issue (without any reference to McCowan ) in Sierra Rutile Ltd. v. Katz, 937 F.2d 743, 748 (2d Cir.1991). But see id. at 751-52 (Mahoney, J., concurring).
 
 
 27
 In view of the current status of Second Circuit law on this issue, we affirm the district court's ruling that Lauritzen, a nonparty to the agreement herein that provided for arbitration, was not entitled to a section 3 stay. As in Nederlandse, however, we deem it appropriate to point out that "the district court had inherent power to grant the requested stay." Nederlandse, 339 F.2d at 441. This follows from "the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. North America Co., 299 U.S. 248, 254, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936); see also Builders Federal (Hong Kong) Ltd. v. Turner Constr., 655 F.Supp. 1400, 1407 (S.D.N.Y.1987); Rhone Mediterranee Compagnia Francese di Assicurazioni e Riassicurazioni v. Lauro, 555 F.Supp. 481, 486 (D.V.I.1982), aff'd, 712 F.2d 50 (3d Cir.1983).
 
 
 28
 Nederlandse also provides guidance for any consideration upon remand of a renewed application for a stay by Lauritzen:
 
 
 29
 [D]efendant[ ] ha[s] the burden of establishing that a stay is warranted. Without attempting to list all relevant factors, we point out that the defendant[ ] should demonstrate to the satisfaction of the court that [it] ha[s] not taken nor will take any steps to hamper the progress of the arbitration proceeding, that the arbitration may be expected to conclude within a reasonable time, and that such delay as may occur will not work undue hardship.
 
 
 30
 339 F.2d at 442 (footnote omitted).
 
 Conclusion
 
 31
 We reverse the judgment of the district court insofar as it dismissed the complaint, affirm that judgment insofar as it denied Lauritzen's application for a stay pursuant to 9 U.S.C. § 3 (1988), and remand for further proceedings not inconsistent with this opinion.
 
 
 
 *
 The Hon. Fred I. Parker, United States District Judge for the District of Vermont, sitting by designation
 
 
 [1]
 The complaint also alleges that defendant Irgens Larsen A/S managed the vessel, but Irgens Larsen A/S was not served and did not appear in this action prior to the decision from which this appeal is taken
 
 
 [2]
 "A time charter is a contract to use a vessel for a particular period of time, although the vessel owner retains possession and control." T. Schoenbaum, Admiralty and Maritime Law § 10-1 (1987). The time charterer obtains the right to direct the movements of the vessel during the chartering period. Id. In contrast, a demise, or "bareboat charter," is the "transfer of full possession and control of the vessel for the period covered by the contract." Id
 
 
 [3]
 A voyage charter, like a time charter, is a nondemise charter in which the vessel owner retains possession and control of the vessel. T. Schoenbaum, Admiralty and Maritime Law § 10-1 (1987). "A voyage charter is a contract for the hire of a vessel for one or a series of voyages," rather than for a specified time period. Id
 
 
 [4]
 CMBI and Agrexco point out that the specific enumeration of independent contractors in the Himalaya clause does not mention ship managers. We add that we have found no case explicitly applying a Himalaya clause to a ship's manager, with the possible exception of Ferrex Int'l, Inc. v. M/V Rico Chone, 718 F.Supp. 451, 453, 460 (D.Md.1988) (extending COGSA's $500-per-package limitation to two parties collectively described as "the owners, operators, or managers of [the vessel]"), but perceive no principled basis for excluding such an application in an appropriate case
 
 
 [5]
 Section 3 provides:
 If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.
 
 
 [6]
 The Seventh Circuit subsequently ruled that a nonparty is entitled to a section 3 stay where the relevant issues are in arbitration between parties to the arbitration agreement, see Morrie Mages & Shirlee Mages Found. v. Thrifty Corp., 916 F.2d 402, 405-08 (7th Cir.1990), specifically adopting the "commonsense reading" of section 3 articulated in McCowan to reach that result. See Mages, 916 F.2d at 406