TANBRO FABRICS CORPORATION, Respondent, *v.* DEERING MILLIKEN, INC., Appellant, et al., Defendant.

First Department, January 14, 1971.

*Frederic P. Houston* of counsel (*Melvin Liebowitz* and *Gerald A. McCarville* with him on the brief; *Otterbourg, Steindler, Houston & Rosen P.C.*, attorneys), for appellant.

*Bernard Beitel* of counsel .(*Gainsburg, Gottlieb, Levitan & Cole,* attorneys), for respondent.

MACKEN, J. The question presented is whether respondent, Tanbro Fabrics Corporation (Tanbro), is required to arbitrate its claim against appellant, Deering Milliken, Inc. (Milliken). Tanbro and defendant, Mill Fabrics Corporation (Mill), are fabric converters. Milliken is a major supplier of textiles. In 1968 Mill bought 510,000 yards of fabric from Milliken and paid for it. The fabric was to be held for Mill's account at a mill in South Carolina owned or controlled by Milliken. A year later Tanbro bought from Mill and paid for 260,000 yards, being the balance of the fabric at the South Carolina mill, there to remain subject to Tanbro's further instructions. Tanbro alleges that it first sought to purchase the goods from Milliken and was told that production of the particular fabric had been discontinued but that it was available for sale by Mill. In January, 1970 Tanbro requested Milliken and Mill to deliver the then balance of 203,000 yards and Milliken refused, claiming to have a security interest in the goods in excess of their value.

The purchase contract between Milliken and Mill contained a broad arbitration clause as did that between Tanbro and Mill. There was no agreement, written or otherwise, between Milliken and Tanbro and in fact Milliken disclaims any knowledge of the sale by Mill to Tanbro prior to Tanbro's demand for delivery of the goods. Tanbro commenced this action against Milliken and Mill for damages arising from their failure to deliver and Milliken moved to stay the action and compel Tanbro to arbitrate. (CPLR 7503, subd. [a].) Special Term denied the motion.

The contract between Milliken and Mill provided: " Any property of Buyer, including but not limited to, merchandise billed and held (whether paid for or not) at any time in Seller's (including any parent, subsidiary or affiliate company of Seller) possession, either as principal or agent, shall be deemed held as security for, and may at Seller's option be set-off against any and all of Buyer's obligations to Seller or any parent, subsidiary, affiliate, principal or agent of Seller." Milliken asserts that after and without knowledge of Mill's sale to Tanbro and in reliance on the foregoing clause of its contract with Mill, it advanced credit to Mill resulting in the latter's being indebted to it for over $300,000 at the time Tanbro demanded delivery of the goods. It urges that Tanbro stands in the same position as an assignee of Milliken's contract with Mill and as such is bound by the arbitration and security provisions of that contract and that Tanbro's defense to the motion based on the absence

of a written agreement with Milliken to arbitrate is " artificial " and " inequitable ". Neither position is tenable.

Of course, the assignee of a contract acquires the assignor's rights therein and assumes its obligations including an agreement to arbitrate. (*Matter of Lowenthal,* 199 App. Div. 39, affd. 233 N. Y. 621; *Matter of Lipman* [*Haeuser Shellac Co.*], 289 N. Y. 76.) Its obligation to arbitrate arises not by implication but by established contract law. But Tanbro was not Mill's assignee but a purchaser of goods to which Mill had title. There being no express agreement between Milliken and Tanbro concerning the transaction, Milliken perforce was required to resort to evidence dehors the contracts between Milliken and Mill and Mill and Tanbro. To that end, it has established that in several prior purchases by Tanbro from Milliken the contracts contained the same security interest and arbitration clauses as the present contract between Milliken and Mill and that Tanbro knew or should have known of the existence of the security agreement when it undertook to purchase from Mill. But assuming that it knew of the existence of the agreement, Tanbro would not stand in the position of an assignee of Milliken. Tanbro purchased the goods from Mill and its position in this action is that it was a " buyer in ordinary course of business " as defined by subdivision (9) of section 1–201 of the Uniform Commercial Code and as such took the goods free of Milliken's security interest. (Uniform Commercial Code, § 9–307.) There is no evidence that in selling to Tanbro, Mill violated its security agreement with Milliken and, on the contrary, Milliken alleges that the extension of credit forming the basis of its present claim was made after that sale. (Cf. *Embassy Men's Apparel* v. *Lyman Print. & Finishing Co.,* 247 S. C. 471, cited by appellant; Practice Commentary, par. 3, McKinney's Cons. Laws of N. Y., Book 62½, Uniform Commercial Code, § 9–307.) But determination of the merits of the controversy should not be considered on this motion (see CPLR 7501). In any event, under the circumstances, there is no basis for Milliken's contention that Tanbro's legal status vis-à-vis Milliken's contract is such to require Tanbro to arbitrate as an assignee.

Milliken argues that because Tanbro may be required to arbitrate with Mill and the latter with Milliken, Tanbro's claim of lack of privity is artificial and inequitable. If there be anything artificial, it is the assumption that Mill has any real dispute with Tanbro or Milliken. The basic issue here is the right to possession of the goods. It is clear that as between Tanbro and Mill, Tanbro is entitled to possession and Milliken is so entitled as

against Mill. The real issue is between Tanbro and Milliken. (*Alpert* v. *Admiration Knitwear Co.*, 304 N. Y. 2.)

Arbitration may not be compelled unless agreed to in writing by clear language and such an agreement "will not be extended by construction or implication." (*Matter of Riverdale Fabrics Corp.* [*Tillinghast-Stiles Co.*], 306 N. Y. 288, 289; *Matter of ITT Avis, Inc.* v. *Tuttle*, 27 N Y 2d 571; *Matter of Levin-Townsend Computer Corp.* [*Holland*], 29 A D 2d 925.) Nothing here shown warrants departing from these established principles.

In cases cited in the dissent (e.g. *Matter of Blum Folding Paper Box Co.* [*Friedlander*], 27 N Y 2d 35; *Vigo S. S. Corp.* [*Marship Corp.* of Monrovia], 26 N Y 2d 157; *Merrill Lynch, Pierce, Fenner & Smith* v. *Griesenbeck*, 28 A D 2d 99, affd. 21 N Y 2d 688; *Matter of Exercycle Corp.* [*Maratta*], 9 N Y 2d 329; *Matter of Helen Whiting, Inc.* [*Trojan Textile Corp*], 307 N. Y. 360) the litigants concededly or by holding of the court were parties to written agreements to arbitrate and the disputes involved were found to be encompassed within such agreements. There was no agreement of any kind between Tanbro and Milliken concerning the transaction here involved and a custom among members of the textile industry to incorporate arbitration agreements in contracts between themselves may not be equated with by-laws of trade associations binding their members to arbitration (cf. *Merrill Lynch, supra*). While recognizing that presented with the same dispute a court and arbitrators might reach differing judgments, we do not share the dissenter's apparent concern that resolution by a court of law of this controversy, essentially involving a question of law, may work an injustice on either party.

The order appealed from should be affirmed with costs and disbursements.

McGIVERN, J. (dissenting). In my view there is an impress of arbitration in the dealings between these parties. (*Matter of Blum Folding Paper Box Co.* [*Friedlander*], 27 N Y 2d 35; *Trafalgar Sq.* v. *Reeves Bros.*, 35 A D 2d 194; *Matter of National Equip. Rental* [*Amer. Pecco Corp.*], 35 A D 2d 132; *Braten Apparel Corp.* v. *Rutger Fabrics Corp.*, 35 A D 2d 921; *Matter of Exercycle Corp.* [*Maratta*], 9 N Y 2d 329; *Merrill Lynch, Pierce, Fenner & Smith* v. *Griesenbeck*, 28 A D 2d 99, affd. 21 N Y 2d 688.) All of their interrelating contracts had arbitration clauses. Tanbro permitted Milliken, as the known supplier, to retain the goods for the credit of Mill; and the suit of Tanbro against Mill has already been stayed and arbitration directed. Milliken need only demand arbitration against Mill

to justify a clear right to consolidation of the respective arbitrable claims of the parties. (See *Vigo S.S. Corp.* [*Marship Corp. of Monrovia*], 26 N Y 2d 157.)

A reiteration of the rule that there must be an explicit agreement to arbitrate and that one may not be drawn into arbitration by implication establishes no magic barrier precluding the relief requested by Milliken under the circumstances here prevailing. The true test is whether or not the party objecting to arbitration is being "unwittingly" relegated to an arbitral forum. (*Matter of ITT Avis* v. *Tuttle,* 27 N Y 2d 571.) I find it difficult to conclude that Tanbro never contemplated that a controversy would be relegated to arbitration. As Judge DESMOND said in *Matter of Helen Whiting, Inc.* (*Trojan Textile Corp.*) (307 N. Y. 360, 367): "From our own experience, we can almost take judicial notice that arbitration clauses are commonly used in the textile industry".

Here, it is clear that Tanbro was aware that in accordance with practice Milliken's contract with Mill contained the customary arbitration clause for the settlement of controversies. Tanbro conceded this fact. The affidavit of its vice-president, Tananbaum, states: "Concededly, Tanbro had made other purchases from Milliken, a major source of supply in the textile industry, under contracts containing arbitration clauses, in the same manner that Tanbro had purchased textiles from every other leading mill in the industry."

Thus, it is difficult to avoid the conclusion that Tanbro assented to arbitrate the controversy here involved; and as was stated in *Matter of Helen Whiting, Inc.* (*supra,* p. 368) "while a contract to arbitrate future controversies must be in writing, it need not be signed so long as there is other proof that the parties actually agreed on it". (See, also, *Trafalgar Sq.* [*Reeves Bros.*], *supra.*) Here, the required assent finds its genesis in both custom and a course of dealing in contracts containing provision for arbitration.

Compelling Tanbro to arbitrate does not alter the framework of the obligations assumed by the parties nor result in any valid claim of prejudice by Tanbro. No prejudice is to be found because both the arbitration agreements between the parties herein provide that the arbitral forum is to be the General Arbitration Council of the Textile Industry.*

* The Milliken-Mill contract provides for arbitration "in accordance with the rules then obtaining of the American Arbitration Association or the General Arbitration Council of the Textile Industry," whichever shall be first selected by the party instituting said arbitration.

Even if there were validity to Tanbro's position "we cannot approve of concurrent proceedings" possibly leading to inconsistent awards. (*Matter of Stewart Tenants Corp.* [*Diesel Constr. Co.*], 16 A D 2d 895, 896.)

In any event, it is clear that Tanbro was not an innocent purchaser "unwittingly" involved in Milliken's claims on the goods and Milliken's claim of right to compel arbitration as between Tanbro and Milliken. There was nothing secret about Milliken's continued holding, over a period of eight months, of the goods for the account of Mill Fabrics.

The contract between Tanbro and Mill Fabrics was made on May 16, 1969. In November of 1969 Milliken was requested by Mill Fabrics to deliver 57,000 yards of goods to Tanbro. Nor is there anything to indicate that at that time Tanbro had any interest in the remaining 203,000 yards of goods still in Milliken's possession. It was not until January, 1970, after Mills got into financial difficulties, that Tanbro claimed ownership of the goods and demanded delivery from Milliken. **The failure to disclose Tanbro's interest in the remaining goods spells out Tanbro's assent to Milliken's continued possession with its incident attributes.**

Without presuming to pass on the ultimate merits of the controversy, it is clear on this record that such title as Tanbro had to the goods was subject to the burden of Milliken's security interest. The position of Tanbro may not be equated with that of an innocent buyer in the ordinary course of business purchasing from a seller's inventory in possession, and who is protected from hidden property interests. (Uniform Commercial Code, § 2-403, subds. [1] and [2], Official Comments, McKinney's Cons. Laws of N. Y., Book 62½, pp. 395-396; *Embassy Men's Apparel* v. *Lyman Print. & Finishing Co.*, 247 S. C. 471; *Rothstein Corp.* v. *Kerr S. S. Co.*, 21 A D 2d 463, 468.) Although we here deal, not with an assignment, but with a sale of goods, particularly applicable is the rationale underlying Judge POUND's statement in *Matter of Hosiery Mfrs. Corp.* v. *Goldston* (238 N. Y. 22, 28) wherein he said: "The further claim is made that Goldston, the plaintiff in actions Nos. 1, 2, 3 and 4, was not a party to the arbitration contract and was not bound thereby. But Goldston took the assignment of acceptance and the account for goods sold and delivered subject to the rights of the petitioner. *Arbitration contracts would be of no value if either party thereto could escape the effect of such a clause by assigning a claim subject to arbitration between the original parties to a third party.* (*Matter of Lowenthal*, 199 App. Div. 39; affd., 233 N. Y. 621.)" (Italics supplied.)

To give validity to Tanbro's position would allow a possible deprivation of Milliken's security interest in the goods, which security interest was apparently never relinquished. I cannot accept the contention that because Mill " sold " its interest in the goods it could, by so doing, defeat Milliken's security interest and right to have determined by arbitration a controversy concerning that security interest. The obligation to arbitrate may not so readily be eluded. (See *Glasser* v. *Price,* 35 A D 2d 98, 101.)

In sum, better reason suggests that this court should not strain to find an absence of agreement to arbitrate when there is ample ground for finding that assent which justifies relegating the antagonists to a common arbitral forum freely and independently found acceptable by them for the settlement of their controversies.

I would, therefore, reverse the order appealed from, stay the action against Milliken, and compel Tanbro to arbitrate its dispute with Milliken.

EAGER, J. P., and TILZER, J., concur with MACKEN, J.; McGIVERN, J., dissents in an opinion.

Order, Supreme Court, New York County entered on June 3, 1970, affirmed. Respondent shall recover of appellant $30 costs and disbursements of this appeal.