**SEA SPRAY HOLDINGS, LTD., Plaintiff**

v.

**PALI FINANCIAL GROUP, INC. and Buyers United, Inc., Defendants**

**No. 03 Civ. 1988(VM).**

United States District Court, S.D. New York.

June 20, 2003.

Eric J. Grannis, New York City, for defendants.

1. Sea Spray is a business entity organized under the laws of the British Virgin Islands with its principal place of business in Tortola, British Virgin Islands.

2. This factual recitation derives primarily from the Affidavit of Paul Jarman dated April 16, 2003 (the "Jarman Aff.") and accompany-

### DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Sea Spray Holdings, Ltd. ("Sea Spray") commenced two proceedings in the New York State Supreme Court, New York County, against Pali Financial Group, Inc. ("Pali") and Buyers United, Inc. ("Buyers"), seeking to recover obligations asserted pursuant to a promissory note. That court issued an order directing a stay of arbitration proceedings that Buyers had commenced in Salt Lake City, Utah before the American Arbitration Association (the "AAA"). Thereafter, invoking this Court's diversity jurisdiction under 28 U.S.C. §§ 1332(a)(2) and subject matter jurisdiction under 28 U.S.C. § 1331 and 9 U.S.C. § 203, Buyers removed the two actions to this Court pursuant to 28 U.S.C. § 1441 and 9 U.S.C. § 205, where they were subsequently consolidated.[1] Now before this Court are Buyers's motions to vacate the stay of arbitration proceedings and to dismiss pursuant to Rules 12(b)(1) and (3) of the Federal Rules of Civil Procedure and the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.* For the reasons discussed below, Buyers's motions are GRANTED.

### I.  BACKGROUND

In August 2001, Sea Spray entered into a General Security Agreement dated August 2001 (the "Security Agreement") with Infotopia, Inc. ("Infotopia"), by which Sea Spray received an interest in certain designated property securing a loan by Sea Spray to Infotopia.[2] Section 1 of the Security Agreement provides:

ing exhibits, from the Affirmation of Martin I. Gold In Support Of Plaintiff's Petition For A Stay Of Arbitration And In Opposition To Defendant Buyers United, Inc.'s Motion To Vacate The Stay And Dismiss The Plenary Action dated April 22, 2003 and accompanying exhibits, and from the Order To Show

The Borrower [Infotopia] hereby collaterally pledges, assigns and grants to the Lender [Sea Spray] a continuing valid and perfected lien on and security interest in all of the Borrower's right, title and interest in and to the collateral described in Section 2 hereof ... in order to secure the payment and performance of the Loan.

The Security Agreement further provides that "any dispute arising out of or in connection with this security agreement, whether sounding in contract, tort, equity or otherwise, shall be governed by the internal laws (as opposed to the conflicts of laws provisions) and decisions of the State of New York." (Security Agreement, § 6(l).) The Security Agreement also contains a forum selection clause designating jurisdiction in the "state and federal courts located in New York, New York." (*Id.*, § 6(m).)

On April 24, 2001, Buyers entered into a Loan Agreement By And Between Buyersonline.com, Inc., A Delaware Corporation, and Infotopia, Inc. dated April 24, 2001 (the "Loan Agreement"), attached as Exhibit A to Jarman Aff. Under this transaction, Buyers borrowed funds from Infotopia, by executing and selling to Infotopia a Buyersonline.com, Inc. Promissory Note dated April 24, 2001 (the "Note"); attached as Exhibit B to Jarman Aff., reflecting a principal sum of $500,000.00 to be repaid with interest within 18 months of the execution date. The Note is included in the collateral identified as the subject of Sea Spray's security interest pursuant to the Security Agreement with Infotopia. (Security Agreement, Schedule A.) The Loan Agreement contains an arbitration clause which provides:

Any controversy or claim between or among the parties, including but not limited to those arising out of or relating to this Agreement or any agreements or instruments relating hereto or delivered in connection herewith and based on or arising in contract or in tort, shall, at the request of any party be determined by arbitration. The arbitration shall be conducted in Salt Lake City, Utah, United States of America, in accordance with the United States Arbitration Act (Title 9, U.S.Code), notwithstanding any choice of law provision in this Agreement, and under the Commercial Rules of the American Arbitration Association ("AAA"), not later than sixty (60) days after appointment of an arbitrator. Any controversy concerning whether an issue is arbitrable shall be determined by the arbitrator.

(Loan Agreement, ¶ 14.)

Prior to the date when repayment of the loan under the Note was due, Buyers contracted and executed an Agreement Of Understanding dated December 12, 2001 (the "Agreement Of Understanding"), attached as Exhibit C to Jarman Aff., with Pali to pay or purchase the Note from Infotopia at a discount. Pursuant to the Agreement Of Understanding, Pali in fact purchased the Note from Infotopia and was redeeming or selling it for a discounted price of $120,000.00 plus 35,000 shares of Buyers's common stock. The Agreement Of Understanding provides in relevant part that:

Upon execution of this Agreement and the payment of the purchase price (the "Purchase Price"), Pali agrees to sell, transfer, quitclaim and deliver the original Infotopia Note to Buyers, with the following written across the face of the

Cause To Stay Arbitration dated March 11, 2003 (the "Order To Stay Arbitration") and accompanying exhibits. Additional citations appear as necessary. The Security Agreement is attached as Exhibit A to the Order To Stay Arbitration.

Infotopia Note, signed and dated by Pali: THIS NOTE IS PAID IN FULL ON THIS 12TH DAY OF DECEMBER 2001. BY PALI FINANCIAL, INC. (Agreement of Understanding, ¶ 2 (emphasis in original).) Buyers made the necessary payments and received the original Loan Agreement and Note, which had been signed by the president of Infotopia, dated December 13, 2001, and bearing the phrase, "obligation paid in full."

In a letter dated November 22, 2002 from Sea Spray to Buyers, Sea Spray alleged that Buyers's payment or repurchase of the Note was ineffective as against the security interest Sea Spray had acquired in the Note pursuant to the Security Agreement, and Sea Spray asserted that Buyers was in default of its continuing undischarged obligations under the Note. Thereafter, Buyers commenced an arbitration proceeding in Salt Lake City, Utah by filing with the AAA a Demand For Arbitration And Statement Of Claim dated February 18, 2003 (the "Demand For Arbitration"), attached as Exhibit E to the Petition To Stay Arbitration dated March 11, 2003, invoking the arbitration provision of the Loan Agreement.

Sea Spray, in turn, initiated two proceedings in the New York State Supreme

Court, an action to stay arbitration and a plenary action to recover damages. In the Order To Stay Arbitration, that court granted Sea Spray's request for a stay of arbitration proceedings on March 11, 2003. On March 21, 2003, Buyers removed to this Court both proceedings, which were subsequently consolidated into a single action. Now before the Court lies Buyers's motions to vacate the Order To Stay Arbitration and to dismiss pursuant to Fed. R. Civ. P 12(b)(1) and (3) and the FAA.[3]

## II.  DISCUSSION

### A.  BUYERS'S ARGUMENTS UNDER THE FAA

Buyers argues that the present litigation should be dismissed in light of the arbitration provision in ¶ 14 of the Loan Agreement accompanying the Note. Sea Spray opposes this claim, arguing that it has no interest, through its Security Agreement with Infotopia, in the Loan Agreement but, rather, only in the Note, and that, at any rate, to the extent that the Note and Loan Agreement together constitute a single, integrated transaction or contract, Infotopia's commitment to arbitrate does not pass to Sea Spray via the Security Agreement.[4] The Court agrees with Buyers.

---

**3.** In its Notice Of Motion dated April 9, 2003, Buyers identifies Fed.R.Civ.P. 12(b)(1) and (3) as bases for its motion to dismiss, and it accordingly asserts arguments addressing jurisdiction and venue in its Memorandum Of Law In Support Of Motion Of Defendant/Respondent Buyers United, Inc. To Dismiss Actions And To Vacate Stay Order dated April 9, 2003. In a section of this memorandum entitled "All Of Sea Spray's Claims Are Related To The Loan Agreement And Therefore Subject To Arbitration," however, Buyers also invokes the FAA to argue for dismissal of this litigation; Buyers also invoked §§ 203 and 205 of the FAA as bases for jurisdiction in its Notice Of Removal dated March 20, 2003. Because this line of argument does not constitute a challenge to subject matter jurisdiction

pursuant to Rule 12(b)(1) or venue pursuant to Rule 12(b)(3), the Court will construe it as a request for a stay of proceedings under FAA § 3 and to compel arbitration under § 4.

**4.** At the outset, the Court notes that Sea Spray relies on the Security Agreement as the basis for its asserted rights in the Note. Through §§ 6(e) and 6(1) of the Security Agreement, Sea Spray consented to resolve any disputes arising thereunder pursuant to the laws of the State of New York and the U.C.C., and, accordingly, Sea Spray invokes New York law in presenting its various arguments to the Court in opposition to Buyers's present motions. Buyers, too, relies on New York law in asserting its arguments in support of its motions to dismiss and to vacate the

### 1. The Transaction

■ Regarding Sea Spray's contention that the Loan Agreement and Note represent independent obligation, rendering the Loan Agreement's arbitration provision inapplicable to Sea Spray's interest in the Note, the Court finds no merit in this claim. New York law on this matter is clear and dictates that " 'where two or more written instruments between the same parties concerning the same subject matter are contemporaneously executed, they will be read and interpreted together.' " *Ameritrust Co. Nat'l Assoc. v. Chanslor,* 803 F.Supp. 893, 896 (S.D.N.Y. 1992) (quoting *Liamuiga Tours v. Travel Impressions, Ltd.,* 617 F.Supp. 920, 927 (E.D.N.Y.1985)); *see This Is Me, Inc. v. Taylor,* 157 F.3d 139, 143 (2d Cir.1998) ("Under New York law, all writings forming part of a single transaction are to be read together." (citations omitted)); *Gordon v. Vincent Youmans, Inc.,* 358 F.2d 261, 263 (2d Cir.1965) ("New York law ... requires that all writings that form part of a single transaction and are designed to effectuate the same purpose be read together, even though they were executed on different dates and were not all between the same parties." (citations omitted)); *Rhythm & Hues, Inc. v. Terminal Mktg. Co., Inc.,* No. 01 Civ. 4697, 2002 WL 1343759, at *6 (S.D.N.Y. June 19, 2002) (same); *In re: Houbigant, Inc.,* 914 F.Supp. 964, 994–95 (S.D.N.Y.1995) ("[W]here two or more writings are executed as part of the same general transaction, they are to be read together as part of the same agreement...."); *Nau v. Vulcan Rail & Constr. Co.,* 286 N.Y. 188, 36 N.E.2d 106, 110 (1941) ("All three instruments were executed at substantially the same time, related to the same subject-matter, were contemporaneous writings and must be read together as one." (citations omitted)).

Here, the Loan Agreement references the Note. (*See, e.g.,* Loan Agreement, ¶¶ 1, 2 ("Pursuant to the 'Promissory Note' ... Lender has agreed to loan Debtor the aggregate principal amount of One Hundred Thousand Dollars ($500,000) [sic] (the 'Loan').... *In consideration thereof,* Debtor will issue, cause to be executed and deliver to Lender, *concurrent with its execution hereof, a Note equal to the amount of the Loan,* upon the terms and conditions specified therein, and *in the form attached hereto* as Exhibit 1.").) Likewise, the Note references the Loan Agreement. (*See, e.g.,* Note, ¶ 9(e) ("... contained in that certain Loan and Security Agreement, *by and between the Parties relating to* this Note ...." (emphasis added)).) Both instruments were executed on the same date, both were executed between same parties, and the Note was attached to the Loan Agreement. Furthermore, both documents address the same subject matter, which lies at the core of the present dispute, namely, the making of a $500,000.00 loan to Buyers by Infotopia. Under these circumstances, the two documents represent a single, integrated transaction and must be taken together. Accordingly, Sea Spray's argument that the Note stands apart from the Loan Agreement as regards Sea Spray's asserted interest in the underlying loan, thus insulating Sea Spray from the Loan Agreement's arbitration clause, must be rejected.

### 2. The FAA and the Arbitration Clause

■ The FAA creates a "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA]." *Moses H. Cone*

stay. Consistent with this apparent consensus between the parties, the Court applies New York law where required to resolve the motions before it.

*Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The FAA reflects "a strong federal policy favoring arbitration as an alternative means of dispute resolution." *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir.1998); *see David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 248 (2d Cir.1991). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (emphasis in original). In deference to this strong federal policy, courts must construe arbitration agreements "as broadly as possible." *Oldroyd*, 134 F.3d at 76; *Collins & Aikman Prod. Co. v. Bldg. Sys.*, 58 F.3d 16, 19 (2d Cir.1995). In this vein, the Second Circuit has held that "the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that [it] covers the asserted dispute." *Oldroyd*, 134 F.3d at 76 (citation omitted; internal quotations omitted); *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir.1997) (same) (citations omitted; internal quotations omitted).

In the present case, the arbitration provision contained in the Loan Agreement is broadly worded, providing in relevant part:

> *Any controversy or claim* between or among the parties, *including but not limited to* those arising out of or relating to this Agreement *or any agreements or instruments relating hereto or delivered in connection herewith* and based on or arising in *contract or in tort*, shall, at the request of any party be determined by arbitration.

(Loan Agreement, ¶ 14 (emphasis added).) By the plain language of this arbitration clause, Sea Spray's asserted interest in the Note falls within the scope of this term, as the Note is an "instrument[ ] relating" to the Loan Agreement and "delivered in connection [t]herewith." [5] The parties' dispute concerns whether the commitment to arbitrate itself is binding upon Sea Spray. Resolution of this question requires an examination of the rights, interests, and obligations of Infotopia conveyed to Sea Spray through the Security Agreement between them as regards the Note.

■ Under the Security Agreement, Infotopia conveyed a security interest in certain specified collateral. Section 1 of the Security Agreement provides:

> The Borrower [Infotopia] hereby collaterally pledges, *assigns* and grants to the Lender [Sea Spray] a continuing valid and perfected lien on and security interest in all of the Borrower's right, title and interest in and to the collateral de-

---

**5.** Indeed, it is effectively undisputed that the subject matter of the present dispute falls within the scope of the arbitration clause. Sea Spray never challenges this point, instead arguing that the arbitration agreement itself is not binding on Sea Spray. In fact, Sea Spray appears to explicitly concede the matter: "Even if Sea Spray concedes that it is broad, the threshold question is whether Sea Spray can enforce its rights under the Security Agreement—for if it can—Buyers' argument falls apart." (Plaintiff's Memorandum Of Law In Support Of Its Petition To Stay Arbitration And In Opposition To Defendant Buyers United, Inc.'s Motion To Dismiss The Petition And The Plenary Action For Damages dated April 22, 2003, at 12 (emphasis added).) Under these circumstances—given this potential concession in the absence of any argument opposing the matter—the Court has been presented with no basis to identify a dispute with respect to whether Sea Spray's claim falls within the scope of the arbitration agreement.

scribed in Section 2 hereof . . . in order to secure the payment and performance of the Loan.

(emphasis added.) The specified categories of collateral include the Note held by Infotopia that was the product of its Loan Agreement with Buyers. (Security Agreement, Schedule A.) In that Loan Agreement, Infotopia contractually bound itself to resolve disputes relating to that transaction via arbitration, in the process waiving its right to otherwise litigate any such claims. (Loan Agreement, ¶ 14.)

Through the Security Agreement, Sea Spray stands as an assignee of Infotopia's interests in the specified collateral, which includes the Note. *See, e.g., Septembertide Publ'g, B.V. v. Stein and Day, Inc.,* 884 F.2d 675, 681–82 (2d Cir.1989) (treating secured creditor as an assignee); *Richard T. Blake & Assocs., Inc. v. Aetna Cas. and Surety Co.,* 255 A.D.2d 569, 681 N.Y.S.2d 73, 75 (2d Dep't 1998) (same). As an assignee, Sea Spray is not entitled to any more rights than Infotopia because Infotopia cannot convey, through the Security Agreement or otherwise, an interest greater than that which it possessed. *See Septembertide Publ'g, B.V.,* 884 F.2d at 681–82 ("[A]n assignor cannot assign that which it no longer owns or controls. . . . In sum, [the secured creditor] possessed a valid and enforceable security interest under the UCC. But in taking a security interest in its assignor's property, it cannot claim rights in the property that were not the assignor's to give."); *Int'l Ribbon Mills, Ltd. v. Arjan Ribbons, Inc.,* 36 N.Y.2d 121, 365 N.Y.S.2d 808, 325 N.E.2d 137, 139 (1975) ("It is elementary ancient law that an assignee never stands in any better position than his assignor. He is subject to all the equitables and burdens which attach to the property assigned because he receives no more . . . than his assignor."); *Richard T. Blake & Assocs., Inc.,* 681 N.Y.S.2d at 75 ("[T]he security interest

was limited to the same extent that [the debtor's] rights were limited by the [prior agreement with a third-party]. It is well established that an assignee stands in the shoes of the assignor and takes the assignment subject to any pre-existing liabilities.").

This principle applies under New York law even when the restriction at issue is a commitment to arbitrate. New York's adoption of the U.C.C., specifically, Article 9, "means that a finance assignee suing on an assigned contract is bound by that contract's arbitration clause unless it secured a waiver from the signatory seeking to arbitrate." *GMAC Commercial Credit LLC,* 171 F.Supp.2d at 213–14 (referencing U.C.C. § 9–318); *see* U.C.C. § 9–318 ("Unless an account debtor has made an enforceable agreement not to assert defenses or claims arising out of a sale . . . the rights of an assignee are subject to (a) all the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom. . . ."); *Banque de Paris et des Pays–Bas v. Amoco Oil Co.,* 573 F.Supp. 1464, 1469–70 (S.D.N.Y.1983) (assignee of a security interest is bound by arbitration clause in original transaction giving rise to receivable collateral) (referencing U.C.C. § 9–318); *Blum's Inc. v. Ferro Union Corp.,* 36 A.D.2d 584, 318 N.Y.S.2d 414, 415 (1st Dep't 1971), *aff'd,* 29 N.Y.2d 689, 325 N.Y.S.2d 418, 274 N.E.2d 751 (1971) ("An assignee who has taken over the rights of an assignor is bound to an arbitration clause in the assigned contract."). *See also Tanbro Fabrics Corp. v. Deering Milliken, Inc.,* 35 A.D.2d 469, 318 N.Y.S.2d 764, 766 (1st Dep't 1971), *aff'd,* 29 N.Y.2d 690, 325 N.Y.S.2d 419, 274 N.E.2d 751 (1971) ("[T]he assignee of a contract acquires the rights of the assignor therein and assumes its obligations including an agreement to arbitrate.").

Because Infotopia acquired the Note pursuant to a loan transaction restricting its rights to litigate disputes relating thereto and, instead, committing it to arbitration, Infotopia's interest in the Note, so circumscribed, was conveyed to Sea Spray pursuant to the Security Agreement. On February 18, 2003 Buyers commenced an arbitration proceeding by filing a Demand for Arbitration to address Sea Spray's claim over the Note. Because the Loan Agreement circumscribed Infotopia's right to proceed to litigation under such circumstances, compelling it instead to proceed to arbitration, Sea Spray's options are accordingly restricted. Therefore, Sea Spray is not entitled to proceed with the present litigation. Accordingly, this Court will vacate the Order To Stay Arbitration that was granted by the New York State Supreme Court on March 11, 2003, prior to the removal of the proceedings to this Court.

■ Buyers attempted to commence arbitration proceedings in Utah in accordance with the arbitration clause embodied in the Loan Agreement, which provides in relevant part that "[t]he arbitration shall be conducted in Salt Lake City, Utah, United States of America, in accordance with the United States Arbitration Act (Title 9, U.S.Code)...." (Loan Agreement, ¶ 14.) This Court, however, lacks the authority to compel the parties to proceed to arbitration in accordance with the terms of the arbitration agreement because that agreement provides for arbitration in Utah, but the Court's authority to compel arbitration under FAA § 4 is restricted to arbitration proceedings that occur within this District. *See* 9 U.S.C. § 4 ("The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed."). However, un-

der these circumstances, in the face of a clear and binding commitment to arbitrate and upon Buyers's application,[6] the Court will stay the present litigation pursuant to § 3 of the FAA. Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

> As this Court has previously explained,

> [w]here a federal court lacks authority pursuant to 9 U.S.C. § 4 to compel arbitration outside its district, the court may still determine that the dispute nonetheless remains "referable to arbitration" elsewhere, if a forum is designated, and must then order a stay [pursuant to § 3] instead, thereby leaving the parties free to pursue their contractual rights and remedies in the appropriate venue.

*DaPuzzo v. Globalvest Mgmnt. Co., L.P.,* 263 F.Supp.2d 714, 739 (S.D.N.Y.2003); *see Snyder v. Smith,* 736 F.2d 409, 420 (7th Cir.1984) (when a district court is presented with a petition to compel arbitration outside of the district, "the district court should dismiss the petition or, upon motion, stay its proceedings."); *Provident Bank v. Kabas,* 141 F.Supp.2d 310, 315 (E.D.N.Y.2001) ("Where an agreement to

---

6. *See* note 2 *infra.*

arbitrate specifies a venue outside of the district in which the petition is filed, no order to compel may be entered; only a stay is available.").

The Court has already explained that Sea Spray's asserted interest in the Note falls within the broad scope of the arbitration agreement as reflected in the plain language of ¶ 14 of the Loan Agreement, and, for this reason, the dispute is "referable to arbitration under such an agreement" within the meaning of § 3. *See, e.g., McCowan v. Sears, Roebuck and Co.,* 908 F.2d 1099, 1106 (2d Cir.1990) ("A common-sense reading of this section [§ 3] suggests that if there is a federal action 'upon' an 'issue referable to arbitration' by the terms of an arbitration agreement, then the federal court must 'stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.' "); *DaPuzzo,* 263 F.Supp.2d at 738 ("The language of § 3 itself makes clear that the term 'referable to arbitration' is defined not by reference to whether the court in which the litigation is pending is empowered to compel arbitration of the particular dispute, but to whether the issue before the court involving the terms of an arbitration agreement is referable to arbitration as provided *'under such an agreement.'* ") (quoting FAA § 3). Therefore, § 3 authorizes the Court to stay this litigation.

In addition to the authority provided by § 3, the Court, having concluded that Sea Spray is bound by the arbitration provision of the Loan Agreement, may stay this litigation pursuant to its inherent authority to effectively manage its docket. *See Landis v. North Am. Co.,* 299 U.S. 248, 254–55, 57 S.Ct. 163, 81 L.Ed. 153 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for

itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."); *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.,* 156 F.3d 310, 316 (2d Cir.1998) (" '[T]he District Court has broad discretion to stay proceedings as an incident to its power to control its own docket.' ") (quoting *Clinton v. Jones,* 520 U.S. 681, 706–07, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997)); *Sierra Rutile Ltd. v. Katz,* 937 F.2d 743, 749 (2d Cir.1991) ("[W]e have recognized that the district courts have 'inherent power' to grant stays in certain circumstances."); *Nederlandse Erts–Tankersmaatschappij, N.V. v. Isbrandtsen Co., Inc.,* 339 F.2d 440, 441 (2d Cir.1964) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." (citations omitted; internal quotations omitted)); *DaPuzzo,* 263 F.Supp.2d at 741 (district court's inherent power to effectively manage and control its docket provides an independent basis to stay litigation in contemplation of arbitration outside of the district); *Becker v. Silverman,* 638 F.Supp. 193, 198 (S.D.N.Y.1986) (litigation stayed pending securities arbitration pursuant to district court's inherent power to control its docket).

The Court now having vacated the Order To Stay Arbitration and stayed the present litigation commenced by Sea Spray, the arbitration proceeding initiated by Buyers is free to proceed. Should subsequent events lead Buyers to conclude that it would benefit from an order compelling arbitration pursuant to FAA § 4, Buyers is free to commence such a proceeding in the appropriate federal district court in Utah empowered by § 4 to compel arbitration both within its district and in

accordance with the terms of the arbitration agreement.

## B. *SEA SPRAY'S CLAIMS AGAINST PALI*

■ Pali, which was also named as a defendant in this consolidated action, served in some form as an intermediary between Infotopia and Buyers in the transaction in which Buyers repurchased or repaid its obligation under the Note. Pali was not a party to the original Loan Agreement containing the arbitration provision. In a Default Judgment dated June 9, 2003, prior to having considered the merits of Buyers's present motions to dismiss and vacate the Order To Stay Arbitration, this Court granted Sea Spray's application for default judgment against defendant Pali. In light of the Court's findings and conclusions articulated above, however, the Court will vacate this judgment by default and stay Sea Spray's claims against Pali as well.

As this Court has previously explained, "default judgment is generally less satisfactory than a resolution on the merits ... [and a] court should resolve all doubts in favor of a determination on the merits." *David Peyser Sportswear, Inc. v. Tongkook Corp.*, No. 89 Civ. 8461, 1990 WL 165689, at *1 (S.D.N.Y. Oct.26, 1990) (citing *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir.1981)). The Second Circuit has also expressed a "preference for resolving disputes on the merits." *Brien v. Kullman Indus., Inc.*, 71 F.3d 1073, 1077 (2d Cir. 1995) (citing *Davis v. Musler*, 713 F.2d 907, 912 (2d Cir.1983)). In this vein, Fed. R.Civ.P. 60(b)(6) authorizes a court to vacate a default judgment for "any ... reason justifying relief from the operation of the judgment." *See also* Fed.R.Civ.P. 55(c) ("For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered,

may likewise set it aside in accordance with Rule 60(b)."); *see Sec. and Exch. Comm'n v. McNulty*, 137 F.3d 732, 738 (2d Cir.1998). Furthermore, the Second Circuit has explained that "[w]hile normally such relief is sought by motion of a party, ... nothing forbids the court to grant such relief sua sponte." *Fort Knox Music Inc. v. Baptiste*, 257 F.3d 108, 111 (2d Cir. 2001). Either way, the matter is left to the sound discretion of the district court. *See Fort Knox Music Inc.*, 257 F.3d at 111; *McNulty*, 137 F.3d at 738.

The Court concludes that reason justifying relief from the June 9, 2003 default judgment against Pali exists under these circumstances. Having concluded in section II.A(2) *infra* that the present litigation should be stayed in consideration of the arbitration provision of the Loan Agreement, the Court further concludes that piecemeal adjudication of the present dispute is an inefficient expenditure of the Court's and the parties' resources, and could potentially yield inconsistent results and circumscribed determinations that might ultimately prove unfair to those involved.

Whether Pali is bound by the arbitration agreement in this case is uncertain on the facts currently available at this stage of the proceedings. Pali's precise role in the present series of transactions remains somewhat unclear. Whether Pali was an independent intermediary purchasing the Note, or an agent of Buyers facilitating Buyers's repayment or repurchase of the Note, or an agent of Infotopia facilitating its sale or redemption of the Note, are details that would impact this determination. If Pali is bound by the arbitration agreement, then the Court is empowered to stay this litigation as regards Pali pursuant to both § 3 of the FAA and its inherent power to manage and control its docket effectively for the same reasons

discussed above. If, however, Pali is not bound by the arbitration provision of the Loan Agreement, the Court nonetheless may stay this action as against Pali pursuant to its inherent authority to control and manage its docket effectively. *See World-Crisa Corp.*, 129 F.3d at 76 ("[D]istrict courts, despite the inapplicability of the FAA, may stay a case pursuant to 'the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" (quoting *Nederlandse Erts–Tankersmaatschappij, N.V.*, 339 F.2d at 441)); *Citrus Marketing Board of Israel v. J. Lauritzen A/S*, 943 F.2d 220, 224 (2d Cir.1991) (in affirming the district court's denial of a stay under § 3 that had been sought by a nonparty to the arbitration agreement, the Second Circuit reiterated that the district court did have "the inherent power to grant the requested stay." (citation omitted; internal quotations omitted)); *Nederlandse Erts–Tankersmaatschappij, N.V.*, 339 F.2d at 441 ("Granting of the stay cannot be justified under the terms of the Arbitration Act [because] Defendants are not parties to the arbitration agreement.... However, the district court had inherent power to grant the requested stay."); *E.G.L. Gem Lab Ltd. v. Gem Quality Institute, Inc.*, No. 97 Civ. 7102, 1998 WL 314767, at *6 (S.D.N.Y. June 15, 1998) ("Here, the Court is confronted not with nonarbitrable claims, but with some parties who are not obligated to resolve their dispute by arbitration. Nevertheless, ... the court's inherent power to control the disposition of the cases on its docket [authorize a stay pending arbitration]."); *Hikers Indus., Inc. v. William Stuart Indus. (Far East) Ltd.*, 640 F.Supp. 175, 177 (S.D.N.Y.1986) (same reasoning and result).

Furthermore, developing authority suggests that the coverage of § 3 itself might extend to encompass nonparties to arbitra-

tion agreements with relationships or interests in the arbitrable dispute, apparently in light of the district court's inherent authority to otherwise achieve the same result. *See Citrus Mktg. Bd. of Israel*, 943 F.2d at 225 (noting that the Seventh Circuit had interpreted § 3 as applicable to nonparties to arbitration agreements, and recognizing that the law on this matter in this Circuit was in development); *Danisco A/S v. Novo Nordisk A/S*, No. 01 Civ. 10557, 2003 WL 282391, at *4 (S.D.N.Y. Feb.11, 2003) (litigation was stayed under § 3 despite the involvement of a nonparty to the arbitration agreement: "Arbitration agreements must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement.... Plaintiffs cannot avoid arbitration for which they had contracted simply by adding a nonsignatory [party] ...." (citations omitted; internal quotations omitted)). Either way, the Court concludes that a stay is warranted under these circumstances for the reasons indicated.

### C. *DISMISSAL*

For the reasons set forth above, the Court concludes that all of Sea Spray's claims, as against both Pali and Buyers, must be stayed. When all of the issues raised in a litigation lie within the scope of an arbitration agreement, courts have the discretion to dismiss the action rather than issue an order directing a stay. *See Da-Puzzo*, 263 F.Supp.2d at 744–45; *Milgrim v. Backroads, Inc.*, 142 F.Supp.2d 471, 476 (S.D.N.Y.2001); *Eastern Fish Co. v. South Pacific Shipping Co., Ltd.*, 105 F.Supp.2d 234, 241 (S.D.N.Y.2000); *Berger v. Cantor Fitzgerald Sec.*, 967 F.Supp. 91, 96 (S.D.N.Y.1997). As no useful purpose exists for directing a stay of this litigation where all of the issues in dispute are sub-

ject to arbitration, the Court will dismiss the action rather than issue a stay.

## D. *ATTORNEYS' FEES*

Buyers requests attorneys' fees pursuant to ¶ 13 of the Loan Agreement, which, like the arbitration clause, extends to Sea Spray for the same reasons discussed in section II.A *infra.* Paragraph 13 provides: "In the event arbitration, suit or action is brought by any party under this Agreement to enforce any of its terms, and in any appeal therefrom, it is agreed that the prevailing party shall be entitled to reasonable attorneys' fees to be fixed by the arbitrator, trial court, or appellate court." Buyers contends that should the Court—as it does here—dismiss this action in contemplation of arbitration, Buyers becomes a "prevailing party" because it will have successfully enforced its right to have the present dispute resolved through arbitration, and would thereby be entitled to reasonable attorneys' fees pursuant to the plain language of ¶ 13 of the Loan Agreement. Sea Spray offers no opposition to this argument. The Court agrees with Buyers. *See, e.g., Wang v. New York Transit, Inc.,* No 91 Civ. 8695, 1997 WL 642557, at *2 (S.D.N.Y. Oct. 16, 1997) (defendant was entitled to attorneys' fees for costs incurred in successfully seeking a stay of the action pending arbitration); *Brenhouse v. Anthony Indus., Inc.,* 156 A.D.2d 411, 548 N.Y.S.2d 533, 535 (1st Dep't 1989) (where the plaintiff's complaint was dismissed with prejudice, defendant received attorneys' fees pursuant to contract language providing for such an award "to the prevailing party in any suit brought under the Contract.").

## III. *CONCLUSION AND ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the Order To Show Cause To Stay Arbitration dated March 11, 2003 issued by the Supreme Court of the State of New York, County of New York, ordering a stay of arbitration proceedings in this matter, is vacated; and it is further

**ORDERED** that the Default Judgment dated June 9, 2003 against defendant Pali Financial Group, Inc. is vacated; and it is further

**ORDERED** that the motion to dismiss this action filed by defendant Buyers United, Inc. is granted; and it is further

**ORDERED** that defendant Buyers United, Inc. is entitled to reasonable attorneys' fees incurred in connection with this litigation; and it is further

**ORDERED** that defendant Buyers United, Inc. is directed to submit to the Court, by July 3, 2003, all the necessary affidavits and supporting documentation establishing the amount of its attorneys' fees incurred in connection with this litigation.

The Clerk of Court is directed to close this case, subject to its reopening in the event Buyers United, Inc. submits a request for attorneys' fees as authorized herein and any dispute arises with respect thereto requiring further consideration by this Court.

**SO ORDERED.**